Filed 5/8/14  Nolan v. Unempl. Ins. Appeals Bd. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARY NOLAN,<br><br>        Appellant,<br><br>v.<br><br>UNEMPLOYMENT INSURANCE<br>APPEALS BOARD et al.,<br><br>        Respondents;<br><br>TAMMY MERCADO et al.,<br><br>        Real Parties in Interest. | A137299<br><br>(Alameda County<br>Super. Ct. No. RG12619816) |

**I.**

**INTRODUCTION**

An administrative law judge (ALJ) determined that real parties in interest, a paralegal and a legal secretary, were employees of appellant, the attorney for whom they worked, rather than independent contractors, and that they were therefore entitled to unemployment benefits following the termination of their employment.  Respondent Unemployment Insurance Appeals Board (the Board) affirmed the ALJ's decision, and the superior court denied appellant's petition for a writ of administrative mandamus overturning the Board's ruling.

Appellant contends (1) the ALJ denied appellant a fair and impartial hearing; (2) the ALJ's findings are not supported by the evidence; (3) the superior court's findings are not supported by the evidence; and (4) the superior court did not issue an adequate

1

statement of decision. We reject these contentions, and affirm the superior court's denial of appellant's writ petition.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

From 2002 or 2003 until early 2010, with some interruptions, real party in interest Tammy Mercado performed paralegal services for appellant Mary Nolan in support of Nolan's solo family law practice. Real party in interest Melissa Yago performed administrative and secretarial services for Nolan's law practice from 2003 or 2004 to March 2010, also with at least one interruption.[1] Nolan treated Mercado and Yago (collectively, Claimants) as independent contractors rather than employees, and therefore did not report their wages to the Employment Development Department (EDD).

The parties dispute the facts regarding why (and in Mercado's case, when) Claimants stopped working for Nolan, but it is undisputed that Claimants did not work for Nolan after March 1, 2010. On May 17, 2010, Claimants each applied for unemployment benefits. Upon receiving Claimants' applications, EDD commenced an investigation to determine the nature of their work relationship with Nolan.

EDD determined that both Claimants were Nolan's employees, and were therefore eligible for unemployment benefits. Nolan appealed EDD's determinations to the Board, which designated an administrative law judge (ALJ) to conduct an evidentiary hearing. The ALJ held a single evidentiary hearing with regard to both Claimants, over portions of three separate days.

After the hearing, the ALJ issued two separate decisions, one for Mercado and one for Yago, finding in both cases that Claimants were Nolan's employees rather than independent contractors. Nolan appealed the ALJ's decisions to the Board, which affirmed both decisions. Nolan then filed a petition for a writ of administrative mandate

---

[1] The specifics of Mercado's and Yago's work relationships with Nolan are the crux of the dispute in this case. We defer further discussion of them until after our explication of the governing law and the standards of review applicable to the issues Nolan raises on appeal.

in the Alameda County Superior Court. That court rejected Nolan's challenges to the decisions of the ALJ and the Board, and denied Nolan's writ petition. This timely appeal ensued.[2]

## III.

### DISCUSSION

#### A. Challenge to Factual Findings by ALJ and Superior Court

##### 1. Substantive Law: Employees versus Independent Contractors

By now, the case law regarding the distinction between employees and independent contractors is well settled, and we do not understand Nolan to be arguing otherwise in her brief on appeal. Nonetheless, we review the relevant law briefly, as background to our discussion of its application to the facts of the present case.

Employees, but not independent contractors, are entitled to unemployment benefits if their employment is terminated and they otherwise qualify.[3] (Unemp. Ins. Code, § 656; see also *id.* at §§ 1251 et seq.)[4] Whether a person is an employee or an independent contractor is a question of law if the evidence is undisputed; otherwise, it is a factual issue. (*S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 349-355 (*Borello*); *Gonzalez v. Workers' Comp. Appeals Bd.* (1996) 46 Cal.App.4th 1584, 1592 (*Gonzalez*).) The label placed by the parties on their relationship is not dispositive of whether a person is an employee or independent contractor. (See *Gonzales*, at p. 1594.)

---

[2] Claimants did not file a respondents' brief on appeal, but the Board submitted a brief in support of the trial court's denial of Nolan's writ petition.

[3] Nolan contends that Claimants were independent contractors, but has never asserted that there is any other basis for disqualifying them from receiving unemployment benefits in connection with the termination of the services they rendered to her law practice. Accordingly, we have no occasion to enumerate or discuss any of the other eligibility requirements for unemployment benefits.

[4] All further undesignated statutory references are to the Unemployment Insurance Code unless otherwise noted.

3

For unemployment compensation purposes, the term "employee" includes "[a]ny individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." (§ 621, subd. (b).) By expressly incorporating "the usual common law rules" into the statutory definition, the Legislature delegated to the courts the task of elaborating and applying the tests for determining whether a person in a particular work relationship is an employee or an independent contractor.

In the seminal case of *Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, the Supreme Court clarified that under the statutory scheme, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. [Citation.] If control may be exercised only as to the result of the work and not the means by which it is accomplished, an independent contractor relationship is established. [Citation.]" (*Id.* at pp. 946-947.) " 'If the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists.' " (*Id.* at p. 949.)

The Supreme Court went on to hold in *Tieberg*, *supra*, 2 Cal.3d 943, that while the right to control test is "clearly the most significant test of the employment relationship," it is "not the only element in determining whether an employment relationship has been created. [Citation.]" (*Id.* at p. 950.) " 'Strong evidence in support of an employment relationship is the right to discharge at will, without cause. [Citations.] Other factors to be taken into consideration are (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and

4

(h) whether or not the parties believe they are creating the relationship of employer-employee.  [Citation.]' ʺ  (*Id.* at p. 949.)  We will refer to the individual factors listed by the court as the *Tieberg* factors.

Since the decision in *Tieberg*, *supra*, 2 Cal.3d 943, California courts have repeatedly reaffirmed that whether an individual is an employee or an independent contractor for unemployment purposes is to be determined by applying the right to control test, not standing alone, but as supplemented by the other *Tieberg* factors.  One of the more recent cases so holding is *Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923 (*Air Couriers*).  In *Air Couriers*, the court rejected the contention that delivery drivers for a package service were independent contractors rather than employees.  In so doing, the court held that the proper legal standard against which to evaluate the evidence continues to be the test set forth in *Tieberg* and its progeny, including *Borello*, *supra*, 48 Cal.3d 341, which applied the same test in the workers' compensation context.  (*Air Couriers*, at pp. 932-937; accord, *Messenger Courier Assn. of Americas v. California Unemployment Ins. Appeals Bd*. (2009) 175 Cal.App.4th 1074, 1089-1092, 1095-1096 (*Messenger Courier*) [rejecting employer's challenge to holding in *Air Couriers*].)

### *2. Standard of Review*

Decisions of the Board implicate fundamental vested rights, and are therefore subject to the independent judgment test when reviewed by a superior court pursuant to a petition for writ of mandate.  (*Interstate Brands v. Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 780 (*Interstate Brands*) [employer's right to be free from erroneous charges to its unemployment insurance reserve account is fundamental vested right; employer is therefore entitled to independent judicial review of Board decision affecting that right].)  "By reason of the importance of rights generally affected by administrative adjudications [that are] subject to the independent judgment test of review, California fixes responsibility for factual determination at the trial court rather than the administrative agency tier of the pyramid as a matter of public policy.  [Citations.]" (*Guymon v. Board of Accountancy* (1976) 55 Cal.App.3d 1010, 1015.)  " 'In reviewing a

5

decision of the [Unemployment Insurance Appeals] Board, the superior court exercises its independent judgment on the evidentiary record of the administrative proceedings and inquires whether the findings of the administrative agency are supported by the weight of the evidence.' [Citations.]" (*Sanchez v. Unemployment Ins. Appeals Bd.* (1984) 36 Cal.3d 575, 585 (*Sanchez*); accord, *Evans v. Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407 (*Evans*).)

Exercising its independent judgment requires the superior court to reweigh the evidence and examine the credibility of witnesses. (See *Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658.) However, as the Supreme Court explained in *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 812, the independent judgment test " 'does not mean that the preliminary work performed by the administrative board in sifting the evidence and in making its findings is wasted effort.' " Rather, the court must "begin its review with a presumption of the correctness of administrative findings, and then, after affording the respect due to these findings, exercise independent judgment in making its own findings. [Citations.]" (*Id.* at p. 819.) Moreover, when an administrative decision is supported by undisputed facts, if those facts are subject to conflicting inferences, the superior court exercising independent judgment may draw its own inferences from the evidence in the record, and if the inferences so drawn are supported by substantial evidence, they are binding on the reviewing court. (*Interstate Brands*, *supra*, 26 Cal.3d at p. 774, fn. 2.)

Once the superior court has ruled on the writ petition, the right to independent judicial review on questions of fact has been fulfilled. Thus, our task as an appellate court is limited to reviewing the superior court's judgment to determine whether its factual findings are supported by substantial, credible, and competent evidence, and whether a different result was compelled as a matter of law. (*Sanchez*, *supra*, 36 Cal.3d at p. 585; accord, *Evans*, *supra*, 39 Cal.3d at p. 407; *Bilyeu v. Unemployment Ins. Appeals Bd.* (1982) 130 Cal.App.3d 657, 667.) In applying the substantial evidence standard of review, we " 'must consider the entire record . . . and may not isolate only the evidence which supports the board's findings [citation] and thus disregard relevant

6

evidence in the record. [Citation.]' " (*Steve P. Rados, Inc. v. California Occupational Saf. & Health Appeals Bd.* (1979) 89 Cal.App.3d 590, 595.) Nonetheless, in considering the totality of the evidence, we resolve all conflicts favorably to the prevailing party, and draw all reasonable inferences in support of the judgment. (*Lacy v. California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134.) In that connection, we stress that the testimony of a single witness is sufficient to satisfy the substantial evidence requirement, even if that witness is a party to the proceeding. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614; *Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823.) We also note that the burden is on the principal to establish that persons rendering services were independent contractors rather than employees. (*Messenger Courier*, *supra*, 175 Cal.App.4th at p. 1086.)

Here, the administrative record documents the existence of a number of factual disputes relevant to whether Claimants, in rendering services to Nolan, did so as independent contractors or as employees. The superior court, upon independent review, found no error in the ALJ's findings as to these issues. Under the applicable standard of review, therefore, our task on this appeal is to determine whether there is substantial evidence to support the superior court's determination that the ALJ's findings were supported by the record. We must sustain the superior court's finding if it is supported by substantial evidence, even where the evidence could also have justified contrary findings. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557 (*Yield Dynamics*).) Moreover, "even if error is demonstrated it will rarely warrant reversal unless it appears 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citations.] This means the appellant must show not only that error occurred but that it is likely to have affected the outcome." (*Ibid.*)

### 3. Sufficiency of Evidence: Credibility

The ALJ expressly found Mercado to have been a more credible witness than Nolan. The Board independently reviewed the record, and found no material errors in the ALJ's factual findings, including as to credibility. The superior court, after its

independent review of the record, found that "[C]laimants' testimony appears more credible than [Nolan's] testimony." On appeal, Nolan contends that these credibility findings are not supported by the record.

As an *example* of the reasons why it agreed with the ALJ and the Board that Claimants were more credible than Nolan, the superior court cited the parties' testimony regarding agreements Nolan and Claimants signed that characterized Claimants as independent contractors. All of the parties testified that the agreement was signed in 2009, although it was dated in 2006. Their testimony as to the reason for the agreements differed sharply, however. Nolan testified that she prepared the agreements for Claimants because of their insistence on remaining self-employed. Claimants both testified, however, that they did not ask to be treated as independent contractors; rather, Nolan insisted they sign the agreements because she needed them in connection with an Internal Revenue Service (IRS) tax audit. The superior court found Claimants' explanation more plausible. This assessment is supported by substantial evidence, in that Claimants' rationale better explains why the agreements were backdated to 2006. Moreover, Nolan admitted that in connection with the signing of the independent contractor agreements, she told Mercado that the IRS audit was "looking at outside compensation."

Nolan argues that it was error for the superior court to rely on the backdating of the agreement in assessing her credibility. In support of that contention, Nolan relies on a declaration by a tax expert who analyzed Claimants' personal tax returns for the years at issue and determined that they made more money, net of taxes, as independent contractors than they would have as employees. This evidence was excluded by the ALJ as irrelevant, and Nolan argues this was error.

The expert's analysis lends some additional credence to Nolan's testimony that she treated Claimants as independent contractors because they requested that she do so. This was not the only respect, however, in which the ALJ found Nolan's testimony less credible than that of Claimants, and the superior court relied on the independent

8

contractor agreement issue only as an *example* of the reasons it agreed with the ALJ on that point.

Indeed, other parts of the record provide evidence to support the superior court's decision on credibility. For example, Nolan testified that during 2007, 2008, and 2009, Mercado worked for her only about 60 percent of a forty-hour week, and did not work for her at all for sporadic periods of several weeks at a time. Nolan also estimated that Mercado only worked for her during half of the months between 2002 and the beginning of 2010. Yet the IRS form 1099 that Nolan prepared for Mercado in 2008 reflected a total payment of $86,962.85, and the one for 2009 reflected a total payment of $98,648.

Nolan admitted that these amounts were well above the average annual salary of $65,000 for paralegals in the geographic area. Nolan explained that she paid Mercado generously because Nolan was able to bill her law practice's clients for about 20 hours per week of Mercado's time. Nonetheless, given the amount of Mercado's compensation during 2008 and 2009, we cannot fault the ALJ or the superior court for doubting Nolan's testimony that Mercado worked only 60 percent of a standard work week during those years, and did not work for her at all during some weeks. Moreover, Nolan's testimony about Mercado's work hours was controverted by independent witnesses familiar with Nolan's law practice, including Mercado's predecessor and her replacement during her absence in 2006, who corroborated Mercado's testimony that she was expected to be in Nolan's office and available to answer her telephone during regular business hours.[5]

Nolan also testified, in response to a question from the ALJ, that Mercado was not paid until she finished doing a project. The ALJ followed up by asking Nolan why, in that case, Mercado was paid the same amount every week that she worked. Even from the written transcript, it is evident that Nolan had difficulty explaining this disparity between her testimony and the documentary evidence regarding how Mercado was paid.

---

[5] Nolan testified that the business hours of her law office were 9:00 a.m. to 5:00 p.m. Monday through Thursday, and 9:00 a.m. to 1:00 p.m. on Friday.

The ALJ was entitled to draw an adverse inference regarding Nolan's credibility from this aspect of her testimony.

Similarly, in the context of her contention that Mercado and Yago were treated as independent contractors at their own insistence, Nolan testified that Yago was well educated, was going to college, and had her own personal business. Yago testified, however, that she had no law office or secretarial experience before she began working for Nolan, and that her educational attainments consisted of a high school diploma and some college-level classes taken online, which she did not complete. Yago also denied ever having had her own business, or working for others, during the periods she performed services for Nolan. In light of this testimony by Yago, the ALJ and the superior court were entitled to question the credibility of Nolan's assertion that she treated Yago as an independent contractor at Yago's request.

In addition, as discussed *post*, Mercado's and Yago's version of the facts concerning specific aspects of their working relationship with Nolan was corroborated by other witnesses who worked for Nolan, or who were clients of hers. For example, Joseph Ochoa, who worked for Nolan immediately before Mercado and performed similar services, testified that it was Nolan's decision to treat him as an independent contractor and not to withhold taxes from his paychecks, and that he was not given a choice in the matter.

For all of the foregoing reasons, our review of the record confirms that it includes substantial evidence, above and beyond the backdating of the independent contractor agreements, supporting the trial court's conclusion that Claimants' testimony was more credible than Nolan's.[6] For the same reasons, even if the ALJ and the trial court erred in excluding from evidence Nolan's expert's declaration about the economic benefits to

---

[6] Nolan argues that Claimants included the agreements in the documents they submitted to the ALJ before the hearing in order to prejudice the ALJ against Nolan, due to Nolan's having backdated the agreements. Even if we were to accept this argument, we still would not reverse the superior court's credibility finding, because it is supported by other evidence apart from the backdating of the agreements.

Mercado and Yago of independent contractor status—an issue we need not and do not reach—the trial court's credibility finding is still supported by substantial evidence.

### *4. Sufficiency of Evidence: Mercado*

With respect to Mercado, Nolan challenges the sufficiency of the evidence to support the ALJ's findings regarding the overall right to control test, as well as a number of the individual *Tieberg* factors.

### a. Right to Control Test

As our Supreme Court held in *Tieberg*, and reaffirmed in *Borello*, " '[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. . . .' [Citations.]" (*Borello*, *supra*, 48 Cal.3d at p. 350, citing *Tieberg*, *supra*, 2 Cal.3d at p. 946.) In evaluating whether this test is satisfied in the circumstances of this case, we emphasize that the issue is the *right* to control, not the actual *exercise* of that right. "If the employer has the authority to exercise complete control, *whether or not that right is exercised with respect to all details*, an employer-employee relationship exists." (*Empire Star Mines Co. v. Cal. Emp. Com.* (1946) 28 Cal.2d 33, 43, italics added, disapproved on another point in *People v. Sims* (1982) 32 Cal.3d 468, 479-480, fn. 8; see also 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, § 24, p. 64.)

In other words, " '[i]t does not follow that because there is a certain amount of freedom inherent in the nature of the work one is called upon to do that one becomes an independent contractor rather than an employee. [Citation.]' [Citation.]" (*Briggs v. Lawrence* (1991) 230 Cal.App.3d 605, 618 [salaried public defender engaged in representing client is public employee within meaning of California Tort Claims Act]; *JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1064-1065 [upholding agency finding that drivers were employees for purposes of entitlement to workers' compensation where employer retained "all necessary control" over operation, despite company's and drivers' perception of relationship as one of independent contracting].) For example, where a newspaper publisher "retained

11

ownership of the newspapers until delivered, did not charge carriers for lost or misplaced papers, collected subscription fees directly from the subscribers, and received complaints about the manner in which deliveries were made," the newspaper carriers who made deliveries for the publisher were employees rather than independent contractors. (*Gonzalez*, *supra*, 46 Cal.App.4th at pp. 1593-1594.)

In arguing that she did not have the right to control Mercado's work, Nolan stresses evidence that Mercado enjoyed considerable autonomy in performing her work. Nolan admitted at the hearing, however, that Mercado could not prepare pleadings or issue legal opinions to clients on her own. Nolan reviewed all of the court filings, discovery requests, and letters that Mercado drafted for Nolan's signature, and signed them only if they were acceptable to her. As Nolan expressly acknowledges in her opening brief, "[i]t is axiomatic that an attorney is responsible for all work products done for their clients." Thus, Nolan was responsible, as a matter of law, for the legal sufficiency and correctness of all documents emanating from her practice, even if they were prepared by Mercado. (See also Bus. & Prof. Code, § 6452 [attorney who uses services of paralegal is liable for any harm caused by paralegal's negligence, misconduct, or violation of statutes governing paralegals].)

For all of the foregoing reasons, even if Mercado did not in fact require close supervision on a day-to-day basis, due to her high level of skill as a family law paralegal, it remains beyond dispute that Nolan retained the *right* to direct and control Mercado's work. Accordingly, there is substantial evidence to support the findings (express or implied) of the ALJ and the superior court that the right to control test was satisfied with respect to Nolan's work relationship with Mercado.

### b. **Tieberg Factors**

In considering Nolan's arguments with respect to the sufficiency of the evidence regarding the various *Tieberg* factors, we note that no individual *Tieberg* factor is dispositive. (See *Borello*, *supra*, 48 Cal.3d at p. 351 [individual factors cannot be applied mechanically as separate tests; factors are intertwined, and weight depends on particular combinations].) Thus, in order to persuade us that the ultimate finding that Mercado was

an employee is not supported by substantial evidence, Nolan bears the burden of demonstrating that the findings are incorrect as to a sufficient number of the *Tieberg* factors to shift the balance of the overall analysis.

Nolan does not dispute that at least most of the work Mercado did for her was an integral part of the regular business of Nolan's law practice. Nolan also admitted in her testimony before the ALJ that starting in late 2006 or early 2007, Mercado received a set weekly amount of base compensation, plus expense reimbursements and occasional bonuses, and was not paid "by the job." Mercado also received some paid time off, although Nolan disclaimed having any policy regarding paid vacation.[7] In addition, it is not disputed that Mercado performed services for Nolan from no later than 2003 until no earlier than January 2010, with some interruptions, the longest of which was when Mercado left Nolan's office to work at a real estate firm from February to August of 2006. Thus, the conclusions that Mercado performed services integral to Nolan's business, was paid standard weekly compensation, and worked for Mercado during an extended period of time, are supported by substantial evidence. These are all hallmarks of employee status under *Tieberg*. (See *Borello*, *supra*, 48 Cal.3d at p. 351, citing *Tieberg*, *supra*, 2 Cal.3d at p. 949 [*Tieberg* factors include "the length of time for which the services are to be performed; [] the method of payment, whether by the time or by the job; and [] whether or not the work is a part of the regular business of the principal"].)

With respect to hours and location of work, Nolan testified that Mercado was free to work at home, did not have any specific work hours, and was able to set her own schedule. However, Mercado testified that she was generally expected to be available in Nolan's office during the hours it was open. Christensen and Ochoa both corroborated this, stating that while they worked for Nolan, they were expected to be in her law office during business hours.

---

[7] Dawn Christensen, who took over Mercado's duties during the period in 2006 when Mercado was not working for Nolan, also testified that she was given paid vacation time.

13

Another of the *Tieberg* factors is whether the person rendering services provides his or her own tools and equipment, or is furnished them by the principal. In this regard, Nolan testified that Mercado brought her own laptop to Nolan's office on a daily basis. Mercado testified, however, that with the sole exception of an online multiple listing service program, she used Nolan's computers and software to perform her work. She also testified she used Nolan's account to do online legal research, and did not maintain an account of her own. Ochoa testified that while he worked for Nolan, he was provided with a desk, a computer, and software with which to perform his work.

Nolan seeks to bolster her claim that Mercado was an independent contractor through her own testimony that Mercado operated her own independent real estate and paralegal businesses while working in Nolan's office. As to the real estate sales work, Mercado acknowledged that she was working for Nolan at the time she obtained her real estate license. Mercado's 2006 tax documents showed that she earned $3,208 that year working for a private investigator, and also had income from working for a mortgage broker. However, 2006 was the year during which Mercado left her job in Nolan's office for several months. Moreover, Mercado did not have a broker's license, and was only entitled to work on real estate matters under the supervision of a broker. Thus, Mercado's receipt of income from sources other than Nolan during 2006 does not refute Mercado's testimony that she did not operate her own real estate business during the periods when she was working for Nolan.

Moreover, Mercado testified that she only handled a few real estate transactions during the time she worked for Nolan—including one for Nolan personally, and two for Mercado's own investments. Although Mercado acknowledged making occasional use of her real estate skills while working for Nolan, this was to assist Nolan in valuing clients' real property, rather than to operate a separate real estate business.

As to independent paralegal work, Mercado also acknowledged that while working for Nolan, she did assist about eight to ten unrepresented individuals in preparing paperwork for marital dissolutions, although she referred these people to Nolan

14

if it appeared they needed legal advice. Mercado testified, however, that she did not start her own independent paralegal business until after she stopped working for Nolan.

In determining whether substantial evidence supports the superior court's conclusion that Mercado was an employee, we defer to that court's finding that Mercado's testimony was more credible than Nolan's. The undisputed facts listed above, coupled with Mercado's versions of the disputed facts, are sufficient in and of themselves to constitute substantial evidence that Mercado was an employee rather than an independent contractor under the *Tieberg* factors. Accordingly, even though Nolan disputes some facts with regard to other *Tieberg* factors, including when, why, and how Mercado's services to Nolan were terminated, we are persuaded that the superior court's ultimate finding of fact rests on substantial evidentiary support.

### 5. Sufficiency of Evidence: Yago

Yago testified that Nolan told her how to draft letters she wrote for Nolan's signature, and reviewed and edited her drafts. Nolan acknowledged that she assigned projects to Yago, and was ultimately responsible for the accuracy and correctness of Yago's work for her office. Based on this evidence, as well as our discussion *ante* of the application of the *Tieberg* right to control test to the facts of this case, we find substantial evidence in the record supporting the superior court's finding that Yago was Nolan's employee under the right to control test.

With respect to the *Tieberg* factor regarding the worker's services being an integral part of the principal's business, Nolan does not cite any evidence in the record that contradicts the ALJ's findings, based on Yago's testimony, that Yago provided administrative services integral to the operation of Nolan's law practice, such as opening and routing the mail, answering the telephone, procuring office supplies, picking up voicemail messages and relaying them to Nolan, photocopying, paying bills, making bookkeeping entries, and serving legal documents. The fact that Yago may occasionally have run personal errands for Nolan, in addition to her regular work in Nolan's office, does not affect our conclusion that her services as a whole were an integral part of Nolan's law practice.

15

Nolan contends that Yago was self-employed, and did not work exclusively for Nolan during the time she provided services to Nolan's law practice. There was no evidence in the record that Yago had her own business. Nolan relies on evidence that Yago had cosmetics, other personal items, and a massage table delivered to her at Nolan's office. However, Nolan's briefs on appeal cite no evidence that Yago actually used those items to operate a business, or earned any income from such a business. Indeed, Nolan has not drawn to the attention of this court any evidence in the record that conflicts with Yago's testimony that she never had her own business or worked for others while working for Nolan; that the cosmetics and other products were delivered to Yago at Nolan's office because Yago was not home during the day to receive packages; and that the smaller items were for Yago's personal use, and the massage table was for a friend. Nolan cites no authority that a worker's receipt of personal packages at the principal's office address somehow transmogrifies an employee into an independent contractor, and there is nothing in the *Tieberg* factors that would support such a conclusion.

There is substantial evidence in the record justifying the finding that the *Tieberg* factors regarding work hours, location, and basis for payment favor treating Yago as an employee. It is undisputed that Yago was paid at an hourly rate. Her weekly income was based on invoices she submitted, which showed she worked between 36 and 42 hours per week. Yago testified she was required to be at Nolan's office during business hours to answer the phone, that she needed permission to take a day off, and that she received vacation pay. Nolan contended that Yago was free to set her own schedule and to work from home, and did not need permission to be out of the office. However, Christensen, who replaced Mercado during the time she was not working for Nolan in 2006, corroborated Yago's testimony that Yago was expected to be in the office during business hours.

As Nolan points out, there are conflicts in the evidence about the circumstances of Yago's signing the independent contractor agreement, and about what prompted the termination of her services to Nolan. However, all of the *Tieberg* factors discussed above, including the right to control test, support the superior court's ultimate finding of

16

fact that Yago was an employee and not an independent contractor. Accordingly, even if we were to find insufficient evidence to support the ALJ's factual findings about the signing of the agreement and Yago's termination, this would not undermine our conclusion that the superior court's finding as to the ultimate fact is supported by substantial evidence.

## B. Challenge to Fairness of Administrative Hearing

### 1. Standard of Review and Applicable Law

Nolan challenged the fairness of the ALJ's conduct of the administrative hearing both in her appeals to the Board and in her writ petition to the superior court. Both the board and the superior court rejected Nolan's claims. On appeal, we do not give deference to these rulings; rather, we review the administrative record de novo to determine whether it supports Nolan's claim of procedural unfairness, which raises an issue of law.[8] (*TWC Storage, LLC v. State Water Resources Control Bd.* (2010) 185 Cal.App.4th 291, 296; *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169-1170; *Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1442.)

In reviewing Nolan's claims of bias, however, we bear in mind that erroneous rulings on evidentiary issues, and even erroneous factual findings, do not, in and of themselves, establish bias on the part of the ALJ. (*Andrews v. Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 795-796.) Similarly, the ALJ's opinions as to the relative credibility of the witnesses, based on her observations of their demeanor while testifying, are also insufficient, standing alone, to demonstrate bias. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111-1112, disapproved in part on other grounds by *People v. Rundle* (2008) 43 Cal.4th 76, 151.) With those principles in mind, we proceed to consider the specific conduct by the ALJ on which Nolan predicates her claim of bias and denial of a fair hearing.

---

[8] Because we review de novo, as a matter of law, the superior court's determination that the ALJ conducted a fair hearing, we need not consider Nolan's argument that the superior court's statement of decision on that issue is inadequate. (*Davenport v. Unemployment Ins. Appeals Bd.* (1994) 24 Cal.App.4th 1695, 1700.)

## *2. Review of Documents Prior to Hearing*

One of Nolan's grounds for contending that she did not receive a fair hearing is that the ALJ reviewed Claimants' documents ex parte prior to the hearing. The factual background relevant to this contention is as follows. The administrative hearing on Nolan's appeal of EDD's determinations as to both Claimants began on May 26, 2011. The notices sent to all parties' counsel before the hearing indicated that "[a]ll parties [should] send any additional documents by [a specified date] to the Office of Appeals . . . ." The notices also stated that parties appearing at the hearing in person should "bring all documents and witnesses necessary to support your case."

Before the hearing, Claimants each submitted a package of documents to the ALJ in support of their claims. As Nolan acknowledges, the ALJ forwarded copies of these documents to Nolan's counsel in advance of the hearing. This procedure complied with the regulations governing ALJ hearings in EDD matters, which provide that although ex parte communication between a party and the ALJ is generally improper, "[a] document filed or submitted to the administrative law judge is permissible if it is added to the case file, so that all parties have a reasonable opportunity to review it." (Cal. Code Regs., tit. 22, § 5059, subd. (c); see also Gov. Code, § 11430.50 [if presiding officer at administrative hearing receives ex parte communication from party, communication shall be made part of the record, parties shall be notified, and parties requesting to do so shall be given opportunity to comment].)

At the hearing, the ALJ began by identifying Claimants' documents for the record, with exhibit numbers she had previously assigned to them, and indicated that she had "looked at most of these ahead of time." Nolan and her counsel raised no objection at the time, but she now complains that the ALJ's review of Claimants' documents in advance of the hearing is evidence of bias, because those documents included newspaper articles containing negative statements about Nolan. Nolan fails to mention in her briefs,

18

however, that the ALJ *sustained* Nolan's objection to the admission of those newspaper articles into evidence, and excluded them from the record.[9]

In any event, as to all of the documents Claimants submitted, Nolan's counsel had the opportunity to review and comment on them both before and during the hearing. We perceive no due process problem or evidence of bias from the mere fact that—as permitted by the regulations, provided the other party receives notice—the ALJ received and reviewed them in advance.

Nolan also does not mention in her briefs on appeal that in addition to her successful objection to the introduction of the newspaper articles, she prevailed on a threshold procedural issue near the beginning of the hearing. Specifically, Mercado raised an issue about the timeliness of Nolan's appeal of EDD's determination of eligibility as to her. Before taking testimony regarding the substantive issues in the case, the ALJ heard the testimony and argument of Nolan's counsel on the timeliness issue, and then ruled that Nolan's appeal was timely. These two rulings in Nolan's favor, made early in the hearing, vitiate her contention that "[t]he ALJ's prejudgment and advocacy were demonstrated early in the hearing."

### 3. Exclusion of Evidence

Nolan also contends that the ALJ improperly excluded evidence that should have been admitted. Nolan asserts, without any citation to supporting authority, that "[i]n an administrative hearing the only basis for excluding evidence is relevance." That is not the law. "An administrative law judge has discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, or to prevent injustice, undue burden, or prejudice." (Cal. Code Regs., tit. 22, § 5062, subd. (f).) Accordingly, we proceed to consider the specific

---

[9] Nolan contends in her brief that the ALJ later changed this ruling and admitted the newspaper articles, which were grouped into exhibit 13, into evidence. In the portion of the record Nolan cites for this proposition, the ALJ stated (mistakenly) that she had not yet ruled on the admissibility of exhibit 13, but she did not admit exhibit 13 into evidence. To the contrary, exhibit 13 is included in the administrative record under the heading of documents that were "rejected," that is, *excluded* from evidence.

19

items of evidence that Nolan claims were improperly excluded, in light of the basis on which Nolan sought to introduce them.

Nolan offered Yago's tax returns in evidence, and attempted to elicit Mercado's testimony regarding whether she filed her tax returns as self-employed in 2006. Nolan offered this evidence to show that while working for Nolan, Claimants represented themselves as self-employed on their tax returns. The ALJ declined to receive Claimants' tax returns in evidence for that purpose. Nolan contends this was error.

Claimants did not dispute that during the time they rendered services to Nolan, their compensation was reported to the IRS on form 1099, and they filed tax returns showing they were self-employed. Thus, it was not necessary to introduce Claimants' tax returns to establish that fact.[10] The disputed issue was *why* Claimants filed their tax returns as self-employed persons—that is, whether it was their own choice to be treated as independent contractors, or a decision that Nolan made. As to this issue, the excluded evidence had no probative value. Moreover, Nolan does not demonstrate in her briefs how the exclusion of this evidence prejudiced her case, given that it was probative only of facts that were not disputed. (See Cal. Const., art. 6, § 13 [judgments not to be set aside based on improper rejection of evidence unless error resulted in miscarriage of justice]; *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431-1432 [where evidence is improperly excluded, error is not reversible unless it is reasonably probable appellant would have obtained more favorable result in absence of error].)

Nolan complains that the ALJ offered no rationale for her exclusion from evidence of an analysis of Yago's invoices to Nolan, compared with office calendar entries, to show when Yago worked for Nolan. Her brief does not explain, however, what this evidence was offered to prove, why it should have been admitted, or how its exclusion

---

[10] The ALJ made it clear she would accept Claimants' IRS 1099 forms to the extent they were offered to show that while working for Nolan, Claimants also received income from other sources. She declined to receive Claimants' tax returns in their entirety, however, due to privacy concerns.

20

prejudiced her case. Accordingly, we decline to consider this issue. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287.)

Next, Nolan complains that the ALJ excluded various documents pertaining to Mercado's activities in the real estate business. Again, this evidence related to an undisputed issue. Mercado never disputed that she obtained her real estate license during the period she worked for Nolan before February 2006; that she worked in the real estate industry while not working for Nolan between February and August 2006[11]; and that she participated in a few real estate transactions after she started working for Nolan again in the fall of 2006. The disputed issues were whether Mercado conducted her own real estate business while working for Nolan, and if so, whether this justified Nolan's treatment of her as an independent contractor.

The ALJ ruled that even if Mercado did do some real estate work in addition to performing services for Nolan, this did not, in and of itself, establish that Mercado was acting as an independent contractor when she performed services for Nolan. Nolan's opening brief appears to argue that this ruling was incorrect as a matter of law. Nolan cites no authority for that proposition, however. On the contrary, the case law makes clear that a worker's participation in outside employment does not necessarily demonstrate that the worker is an independent contractor. (See *Gonzalez*, *supra*, 46 Cal.App.4th at p. 1592 [fact that newspaper carrier delivered other newspapers in addition to those published by putative employer did not preclude finding that worker was employee].) Accordingly, we see no error in the ALJ's ruling that Mercado's real estate activities did not preclude a finding that Mercado was Nolan's employee.

Although her briefs are not a model of clarity, it appears Nolan may be arguing that Mercado's conduct of a *high volume* of real estate business would have been probative on the question whether Mercado was acting in the capacity of a self-employed independent contractor when she rendered services to Nolan. However, the evidence

---

[11] The ALJ admitted into evidence Mercado's 2006 tax return, which documented her receipt of income from her real estate activities during 2006.

21

about Mercado's real estate work that the ALJ excluded did not have any bearing on the *volume* of real estate work that Mercado did during the periods she worked for Nolan. Thus, Nolan cannot show that the exclusion of that evidence was prejudicial.

Finally, to the extent that Nolan contends the ALJ's exclusion of evidence offered by her is evidence of bias on the part of the ALJ, we note that the ALJ *admitted* several exhibits offered by Nolan even though Claimants' counsel objected to them. Accordingly, we discern no pattern of bias against Nolan in the ALJ's evidentiary rulings.

### 4. Interference in Questioning of Witnesses

Nolan complains in general terms that the ALJ interfered with her counsel's questioning of witnesses. The applicable regulations, however, provide that "[a]n administrative law judge may question any party or witness and may introduce exhibits," and that "[t]he taking of evidence in a hearing shall be controlled by the administrative law judge in a manner best suited to ascertain the facts and safeguard the rights of the parties." (Cal. Code Regs., tit. 22, § 5062, subds. (*l*), (m).) Thus, it was proper for the ALJ to pose questions to witnesses. Moreover, the ALJ did not interrupt only Nolan's counsel; she also frequently interrupted and asked questions during witness examinations by counsel for Claimants, as well as by the EDD representative. Accordingly, the ALJ's questioning of witnesses, in and of itself, did not reflect bias against any party.

In addition to interruptions by the ALJ during the examination of witnesses by Nolan's counsel, Nolan cites various specific instances of assertedly biased questioning by the ALJ. It would unduly prolong this opinion to describe each of these incidents, which Nolan's counsel did not object to contemporaneously. Suffice it to say that we have reviewed all the portions of the record identified in Nolan's opening brief on appeal, and are satisfied that the ALJ's questions and comments, including those that interrupted Nolan's counsel, were prompted by the ALJ's legitimate interest in clarifying the testimony or in asking follow-up questions, or by Nolan's counsel's pursuit of repetitive or irrelevant lines of questioning. None of these incidents reflect any indication of bias or prejudice on the part of the ALJ. Accordingly, we find nothing in the record to indicate

22

that the ALJ's conduct of the hearing reflected anything other than the ALJ's efforts to elicit relevant testimony in a coherent manner, and to deter witnesses or counsel from expending undue amounts of time on matters not material to the issues.

### C. Challenge to Sufficiency of Statement of Decision

Nolan requested that the superior court issue a statement of decision regarding its denial of her writ petition. The superior court issued a statement of decision finding that Nolan "failed to show that the [ALJ's and Board's] finding that an employer-employee relationship existed between the parties is contrary to the law or the weight of the evidence." After summarizing the applicable law as set forth in *Tieberg*, *supra*, 2 Cal.3d 943, the court went on to find that "there is ample evidence in the record to support the conclusion that an employer-employee relationship existed based on [Nolan's] right to control the manner and means of [C]laimants' work as well as [the] secondary factors" enumerated in *Tieberg*.

Nolan contends on appeal that this statement of decision was inadequate. Specifically, Nolan contends that the superior court "made no factual findings on how Claimants were controlled, on weight given to the Borello [*sic*] factors,[12] on weight given to evidence both rejected at the hearing and offered subsequently to hearing, on whether Claimants had their own businesses and whether claimants were terminated."[13]

"[I]t is settled that the trial court need not, in a statement [of] decision, 'address all the legal and factual issues raised by the parties.' [Citation.] It 'is required only to set out ultimate findings rather than evidentiary ones.' [Citation.] ' "[U]ltimate fact[ ]" ' is a slippery term, but in general it refers to a core fact, such as an element of a claim or

---

**12** As discussed *ante*, the law regarding the distinction between employees and independent contractors, as set forth in *Tieberg*, *supra*, 2 Cal.3d 943, was reiterated by the California Supreme Court in *Borello*, *supra*, 48 Cal.3d at pp. 349-355.

**13** Nolan also contends that the superior court's findings regarding the fairness of the administrative hearing were incomplete. As noted *ante*, our de novo review of that issue moots any issue as to the adequacy of the superior court's decision in that regard. In addition, Nolan repeats under this heading her argument that the superior court's finding on the credibility of Claimants' testimony is not supported by substantial evidence. That issue was also discussed *ante*.

23

defense, without which the claim or defense must fail. [Citation.]' It is distinguished conceptually from 'evidentiary facts' and 'conclusions of law.' [Citation.]" (*Yield Dynamics*, *supra*, 154 Cal.App.4th at p. 559.)

Moreover, a "trial court is not required to respond point by point to issues posed in a request for a statement of decision. 'The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.' [Citations.]" (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736, fn. 15, quoting *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1380; see also *Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118 [trial court "is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case"]; *In re Marriage of Garrity & Bishton* (1986) 181 Cal.App.3d 675, 686-687, superseded by statute on another point as stated in *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 484-485 [trial court's statement of decision is required only to state ultimate rather than evidentiary facts].) All that is required in a statement of decision " 'is an explanation of the factual and legal basis for the court's decision as to the principal controverted issues at trial which are specified in the party's request for statement of decision.' " (*R. E. Folcka Construction, Inc. v. Medallion Home Loan Co.* (1987) 191 Cal.App.3d 50, 54.) Concomitantly, a party's request for statement of decision should be limited to non-argumentative specifications of the principal controverted factual issues in the case, and a trial court's failure to respond to requests that do not meet these criteria does not render its statement of decision insufficient. (See *Yield Dynamics*, *supra*, 154 Cal.App.4th at pp. 558-560.)

The only *ultimate* issue of fact presented by this case is whether Claimants worked for Nolan as her employees or as independent contractors. The superior court made an express finding on that issue. This finding satisfied the court's obligations with respect to the requirements for a statement of decision. Its failure to specify its factual findings on each of the *Tieberg* factors, and to explain what weight it gave each factor, is not grounds for reversal.

24

## IV.

### DISPOSITION

The judgment is affirmed.  The Board shall recover its costs on appeal.


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.